**CLEVELAND–TENNESSEE ENAMEL COMPANY, Appellant,**

v.

**Lonnie EATON, Appellee.**

Supreme Court of Tennessee.

Nov. 12, 1974.

Jack W. Whitson, Fillauer, Dietrich, Mobbs, Whitson, Webb & Humberd, Cleveland, for appellant.

Andrew J. Sinor, Cleveland, for appellee.

### OPINION

COOPER, Justice.

This is a workmen's compensation case. The employee, Lonnie Eaton, was found to have a permanent partial disability as the result of a back injury sustained on Octo-

ber 9, 1972, while operating a tow motor for the defendant, Cleveland-Tennessee Enamel Company, and was awarded benefits accordingly. The employer appealed insisting there was no material evidence to support the chancellor's finding that the accident and injury arose out of and in the course of plaintiff's employment, or the finding that the plaintiff gave the required notice of injury. The employer also insists there was no evidence that it knew of or authorized treatment of plaintiff by Dr. John Killifer, and that the chancellor erred in awarding plaintiff a recovery of the expense of Dr. Killifer's treatment.

■ Where the issues on appeal are basically ones of fact, this court reviews the record in a workmen's compensation case only to determine if the trial judge's findings of fact are supported by any material evidence. Gluck Brothers, Inc., v. Breeden, 215 Tenn. 587, 387 S.W.2d 825 (1965). And as pointed out in White v. Whiteway, Inc., 210 Tenn. 449, 454, 360 S.W.2d 12, 15 (1962),

> [F]indings of fact of the trial court will not be disturbed on appeal if supported by any material evidence and this is true even though the preponderance of the evidence is against the finding of the trial court.

The statement from the *White* case, supra, is particularly appropriate in this case in that there is a sharp conflict in the testimony of witnesses on several of the material issues of fact, particularly on the issue of notice.

On considering the record within the scope of this court's review, we find that Lonnie Eaton, now thirty eight (38) years of age, has been employed by Cleveland-Tennessee Enamel Company for approximately fifteen (15) years, doing manual work. The evidence also shows that Mr. Eaton has a history of back trouble, having had a degenerative lumbar disc removed by surgery in 1969. However, following the 1969 operation and until October 9, 1972, Mr. Eaton's back for all practical purposes

was asymptomatic and Mr. Eaton was able to do heavy labor.

On October 9, 1972, Mr. Eaton was working as a tow motor (forklift) operator and was moving material about in defendant's plant. Mr. Eaton testified that while operating the tow motor in a congested area, he was required to lean "way" over to watch for clearance and, in doing so, hurt his back. Mr. Eaton further testified that "that day" he told his supervisor that his back was hurt.

Mr. Eaton continued to work on his job until Thursday, October 12, 1972. According to Mr. Eaton, he said something to his supervisor about his back hurting "every other maybe a day or so and Thursday all day . . . I explained to him, I mentioned it to him that I was hurt and I threatened to go home." Without saying anything more to his supervisor, Mr. Eaton made an appointment with Dr. John J. Killifer for October 19, 1972. Dr. Killifer was the orthopedic surgeon who performed the 1969 operation.

Dr. Killifer testified that on examination of Mr. Eaton, he concluded that Mr. Eaton was suffering from an "irritation of the nerve roots in the low back on the left"; that he treated the condition conservatively by medication, bedrest and a lumbar corset until January, 1973, when he had Mr. Eaton confined to the hospital for a diagnostic myleogram. Dr. Killifer testified further that as the result of the myleogram, he operated on Mr. Eaton and removed the disc between the fourth and fifth lumbar vertebrae. When asked the probable cause of the disc injury, Dr. Killifer testified:

> Mr. Eaton told me that this pain began while he was operating a tow motor. He did not relate to me any onset of such pain in the course of doing something else. I have no reason to doubt Mr. Eaton's word in this particular thing and he has not given me any other thing to hang my opinion on.

> So I stick to his idea there that that probably was the cause of it.

Dr. Killifer also expressed the opinion that Mr. Eaton has a permanent partial disability to the body as a whole as the result of the operation and cannot do manual labor.

Dr. Walter Boehm, who examined Mr. Eaton at the request of the defendant, concluded that Mr. Eaton had a thirty-five percent permanent partial disability to the body as a whole and was "unemployable for labor involving stooping, lifting, bending, [and] excessive physical activity." Dr. Boehm emphasized that his disability rating was "anatomical" not industrial.

■ We think the evidence set out above is sufficient to support the chancellor's finding that "Lonnie Eaton did sustain an accident and injury to his spine or back on October 9, 1972, which accident and injury arouse out of and in the regular course of [his] employment by the defendant."

■ We are also of the opinion that the evidence supports the chancellor's finding that the employer "had knowledge thereof or was given the notice thereof by [Mr. Eaton] in the manner and within the time required by the Workmen's Compensation Statutes of Tennessee." There is evidence that Mr. Eaton informed his supervisor on October 9, 1972, that he had hurt his back while operating the tow motor. And, as pointed out in Gluck Brothers, Inc., v. Breeden, 215 Tenn. 587, 387 S.W.2d 825, 830 (1965), "it is the established law of this State that . . . if an employee's superior is given notice of the accident and injury, this constitutes notice to the employer."

■ Appellant insists also that Mr. Eaton is not entitled to payment of medical expenses because he did not consult with the defendant before obtaining the services of Dr. Killifer. We disagree.

The applicable statute, T.C.A. Sec. 50–1004 provides that:

For not exceeding two (2) years after notice of injury, the employer or his agent shall furnish free of charge to the employee such medical and surgical treatment . . . as may be reasonably required. * * * The injured employee must accept the same; provided that the employer shall designate a group of three or more reputable physicians or surgeons * * * from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician * * *."

The statute is clear—after notice of injury the employer must furnish medical treatment to the employee. If the employer fails or refuses to furnish the injured employee necessary medical treatment, the injured employee can obtain medical treatment on his own and the employer will be liable for payment. Floyd v. Tennessee Dickel Distilling Company, 225 Tenn. 65, 463 S.W.2d 684 (1971); Atlas Powder Co. v. Grimes, 200 Tenn. 206, 292 S.W.2d 13 (1956).

In this case, it is debatable whether appellant ever selected a panel of doctors from which an injured employee could select a treating physician. But, if so, the record shows that when Mr. Eaton reported his injury to his supervisor, the supervisor did not mention the list of doctors, nor did the supervisor authorize medical treatment for Mr. Eaton. We think it follows that under these circumstances, appellant is liable for the cost of the reasonably necessary medical care that Mr. Eaton obtained for himself.

The decree of the chancellor is affirmed. The costs of the appeal are adjudged against the appellant and its surety.

FONES, C. J., and BROCK, HENRY and HARBISON, JJ., concur.